**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH**

|  |  |  |
|---|---|---|
| ROBERT STRINGER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.  2: 21-cv-0547 |
| | ) | |
| v. | ) | United States Magistrate Judge |
| | ) | Cynthia Reed Eddy |
| BRIAN HENDERSON, JEREMY | ) | |
| BENNETT, and C/O DAY, | ) | |
| | ) | |
| Defendants. | ) | |

### <u>MEMORANDUM OPINION</u>[1]

**CYNTHIA REED EDDY, United States Magistrate Judge**

This is a civil rights action initiated under 42 U.S.C. § 1983 by pro se Plaintiff, Robert Stringer, a prisoner in the custody of the Pennsylvania Department of Corrections.  There are currently two motions for summary judgment pending before the Court:

(i) the Motion for Partial Summary Judgment filed by Plaintiff, Robert Stringer, seeking summary judgment only on Plaintiff's claim against Defendant C/O Henderson for failure to protect him in violation of the Eighth Amendment (ECF No. 40), to which the Corrections Defendants filed a response in opposition. (ECF No. 44); and

(ii) the Motion for Summary Judgment filed by the Corrections Defendants seeking summary judgment on both of Plaintiff's remaining claims, a failure to protect claim and a retaliation claim (ECF No. 49), to which Plaintiff did not file a response.

---

[1]     All parties have consented to jurisdiction before a United States Magistrate Judge; therefore, the Court has the authority to decide dispositive motions, and to eventually enter final judgment.  *See* 28 U.S.C. § 636, *et seq*.  *See* ECF Nos. 6 and 11.

The motions are fully briefed and the factual record thoroughly developed.  *See* ECF Nos. 39, 40-1, 41, 44, 45, 46, 50, 51, and 52.  After careful consideration of the motions, the material in support and in opposition thereto, the parties' memoranda, the relevant case law, and the record as a whole, the Court finds that issues of material fact exist from which a factfinder could decide that C/O Henderson was deliberately indifferent to a serious risk of harm to Plaintiff and that deliberate indifference caused harm to Plaintiff. Thus, Plaintiff's motion for partial summary judgment will be denied.  The Corrections Defendants' motion for summary judgment will be granted in part and denied in part.  The motion will be granted <u>only</u> to the extent that Plaintiff's claim for compensatory damages is precluded by the Prison Litigation Reform Act, 42, U.S.C. § 1997e(e).  In all other respects, the Corrections Defendants' motion will be denied.

## I.  Factual Background

Plaintiff, Robert Stringer, is a state prisoner in the custody of the Pennsylvania Department of Corrections currently confined at SCI-Somerset.   The events giving rise to this lawsuit occurred while Stringer was confined at SCI-Greene. It is not disputed that on the morning of June 13, 2019, Stringer went to the medical area of SCI-Greene wanting to speak to someone in the Security Office, which is in the same building as the Medical Department. Declaration of Bryan Henderson, ¶ 6 (ECF No. 46-1).  That day, C/O Henderson was assigned as the Medical Lobby Officer in the control bubble in the Medical Department.[2]

According to Stringer, he approached the control bubble in the Medical Department and notified C/O Henderson he was there to see someone in the Security Office.  C/O Henderson

---

[2]     In June 2019, C/O Henderson's regular assignment was as a Transport Officer on the 0600-1400 shift.  However, if there were no transports scheduled on a given day, there were times he would be reassigned depending on the needs of the institution.  Declaration of Bryan Henderson, at ¶¶ 3 – 6 (ECF No. 46-1).

directed him to go to the medical waiting area with the other prisoners and someone would be out to see him.  After a few minutes, C/O Henderson came into the medical waiting area and announced in front of other prisoners that "Stringer is waiting to give information to security." Pl's Br. in Supp. of Partial S.J., Appendix A, Stmt of Facts, ¶ 3. (ECF No 41-1). C/O Henderson then returned to the control bubble.  C/O Henderson returned a few minutes later to the waiting area and announced for the second time, again in front of other prisoners, that "Stringer is waiting to give information to security." *Id.* at ¶ 4.  C/O Henderson then returned to the control bubble.  C/O Henderson returned to the waiting area a third time at which point C/O Henderson called the Security Office on a telephone and said, again in front of other prisoners, "Stringer is waiting to give you information ('snitch')." *Id.* at ¶ 5.

C/O Henderson describes the events in the waiting area not much differently:  Stringer approached the control bubble and advised that he wanted to speak with someone from the Security Office.  C/O Henderson told Stringer to "stand by and someone would be out to see him."  Stringer returned several times to the control bubble to advise that he wished to speak with someone in the Security Office and each time C/O Henderson told him to wait and that someone would be out.  After Stringer had come to the bubble several times, C/O Henderson exited the bubble with a handheld telephone and called the Security Office.  Declaration of Bryan Henderson at ¶¶ 7 – 8.  (ECF No. 46-1 at p. 6-7).[3]

It is not disputed that C/O Henderson then sent Stringer back to his housing unit. According to the Amended Complaint, when Stringer returned to his housing unit, "inmates came up to Plaintiff saying we heard you were going to Security to snitch, you're a rat and you

---

[3]     Most of the facts that are material to Plaintiff's failure to protect claim are undisputed. For example, C/O Henderson does not deny that he stated in front of other prisoners that Stringer was in the medical area because he was waiting to speak with someone in the Security Office.  However, C/O Henderson disputes that he "explicitly referred to Plaintiff as a 'snitch' or a 'rat'."  Ds' Br. in Support of Mot. for S.J., at 5. (ECF No. 44).

know what's going to happen to you."  Amended Complaint, at ¶ 7.  It also is not disputed that

Stringer reported these threatening comments to his housing unit Sergeant and the next day,

June 14, 2019, Stringer was moved to the Restricted Housing Unit ("RHU") on protective

custody.

On June 25, 2019, Stringer filed Grievance 808825 in which he complained of C/O

Henderson's conduct and comments.  Stringer reported that "inmates started telling the inmates

on [his] block that [he] was a snitch," placing him in immediate danger and fear for his life.

Grievance 808825 (ECF No. 41-2).  As relief, Stringer sought compensatory damages and

requested that C/O Henderson undergo training, be reprimanded, and be transferred.  *Id*.  The

grievance was upheld, in part, to the extent that the investigation confirmed that "Officer

Henderson did, unfortunately, indicate why you were [in Medical] in front of other inmates."

Initial Review Resp., ECF No. 41-2 at p. 4.  The grievance was "denied in part that a security

review and transfer petition has been filed.  Your request for the officer to undergo training and

be reprimanded and compensatory damages is also denied."  *Id*.  Stringer appealed the partial

denial of his grievance to final review, which was denied on October 21, 2019.  (ECF No. 41-2

at p. 5).

Stringer contends that throughout his stay in the RHU, he continually experienced verbal

threats by other inmates.  *See* Amended Complaint, at ¶ 9. According to the Amended

Complaint, "[a]lmost daily, inmates would get on the door calling Plaintiff a rat, a snitch, he

was going to die and someone would get him eventually."  *Id.* at ¶ 10. Stringer has submitted

the affidavit of Anel Cuenas, who states,

> In July or August of 2019, I was sent to the hole and ended up on the same block
> with Mr. Stringer in the hole.  I saw and heard inmates on the door yelling at Mr.
> Stringer calling him a rat and that they would kill him or assault[] him if they
> ever ended up in the next jail he goes in.   People went as far as to say that they

would get in contact with one of their friends in whatever jail he goes to and get him assaulted after finding him on inmate locator.

Affidavit of Anel Cuenas, 8/22/2021 (ECF No. 41-4 at p. 2).  These continual threats started making life difficult for Stringer.  He "was in fear of his life, couldn't sleep at night, [and] continues to suffer from bouts of depression and anxiety to which he receives psych. treatment as a result."  Amended Complaint, at ¶ 11.

Additionally, Stringer alleges that he was subject to retaliation due to his filing Grievance 808825 against C/O Henderson.  According to the verified Amended Complaint, "several correctional officers, staff, including Defendant(s) Bennett and Day, harassed Plaintiff by denying him access to his legal work for not 'signing off' on the grievance."  *Id*. at ¶ 16. Stringer contends he had an appeal pending before the Pennsylvania Superior Court, Case No. 189 WDA 2019, and that both C/O Bennett and C/O Day knew Stringer had a court imposed filing deadline to file a timely brief with the Superior Court, both knew that Stringer could not file the brief without having access to his legal property, and both told Stringer they would not give him his legal property because he had filed a grievance against C/O Henderson. Specifically, Springer avers:

> 28.    On June 27, 2019, Plaintiff spoke to Defendant Day about getting his legal work and he told Plaintiff that since he filed a grievance on Defendant Henderson he would make sure he got nothing.
>
> . . . .
>
> 37.  On numerous occasions both Defendants Bennett and Day told Plaintiff that since he filed a grievance on Defendant Henderson they was not giving him his legal work and laughed.

Amended Complaint (ECF No. 14).

On September 10, 2019, Stringer filed Grievance 822737, in which he stated that although he had been approved for legal exchange of legal materials, he did not receive the materials.  Stringer contended that his appeal in his criminal case was dismissed "as a result of this situation."  Grievance 822737 (ECF No. 52-1 at p. 37).  The Grievance was denied on February 18, 2020, after Stringer had been transferred to SCI Somerset, based on the following determinations:

> Mr. Stringer after careful review of your grievance number 822737 the following determinations are made.  You claim that <u>upon your return to RHU from your placement in POC[4] that you were denied your legal work/exchange when</u> you requested it.  Mr. Stringer our records indicate that you had been in possession of your legal work since July of 2019.  It is your responsibility to submit a request for legal exchanges to staff members, which you had not done, also legal exchanges are done (1) time every (30) day period.  After speaking with the officers involves and reviewing available video from requested dates there is no evidence to substantiate the claims you bring forth in this grievance, additionally Mr. Stringer, you would have only been located in the RHU for a fraction of the (30) days required for a legal exchange at the time of your request.
>
> Given the available information and facts, this grievance and your relief is denied.

Remanded Initial Review Response, 2/18/2020 (ECF No. 52-1, at p. 44) (emphasis in original).[5]

Stringer remained in the RHU at SCI-Greene until October 17, 2019, when he was transferred to general population at SCI-Somerset.  *See* Cell History, ECF No. 46-1 at p. 3; Program Review Committee Actions, No. ECF No. 52-1, at pp. 20 – 27.

---

[4]     From the Amended Complaint, it appears that Stringer may have been transferred from his RHU cell to POC (a psychiatric observation cell) after "he tried to commit suicide because he didn't get to file his appeal," but this is not developed in the summary judgment record. Amended Complaint, Stmt of Facts, ¶ 47.

[5]     In the Amended Complaint, Stringer acknowledges that he "finally [was] given some of his legal work but he was not given the legal work he needed to file his brief because the C/O's instead of taking him to go through the legal work (which is the normal procedure, they randomly went through his legal work outside of his presence and gave him whatever they picked." Amended Complaint, Stmt of Facts, ¶ 39.

## II.  Procedural History

On or about April 6, 2021, Stringer initiated this civil rights action by filing *pro se* a six-count Complaint in the Court of Common Pleas of Greene County.[6]  Five individuals were named as defendants: C/O Henderson, Unit Manager Gumbarevic, C/O Bennett, C/O Day, and Superintendent Robert Gilmore (collectively referred to as the "Corrections Defendants").  ECF No. 1-1.  On April 23, 2021, the Corrections Defendants filed a Notice of Removal in this Court.  In lieu of filing an Answer, the Corrections Defendants filed a motion to dismiss.  (ECF No. 7).  In response, Stringer filed an Amended Complaint, which remains his operative pleading.  (ECF No. 14).

The Amended Complaint reduced both the number of defendants and claims. It names only three defendants, C/O Brian Henderson, C/O Jeremy Bennett, and C/O Day, and contains only three claims: (i) an Eighth Amendment failure to protect claim against Defendant Henderson only (Count I); (ii) a First Amendment retaliation claim against Defendants Bennett and Day (Count II); and (iii) a First Amendment access to courts claim against Defendants Gumbarevic,[7] Bennett, and Day (Count III).  For relief, Stringer requests:

> - $250,000 in compensatory damages for Plaintiff losing his top paying job, transfer to an institution further away from family that is more expensive to travel to for visits, loss of opportunity to pursue claims in the Superior Court and for the continued mental health harm that Plaintiff still suffers.
>
> - $200,000 in punitive damages to punish defendants for conduct and to deter other from committing similar acts.

Amended Complaint, Paragraph VI – Relief (ECF No. 14) (quoted verbatim).

---

[6]      The six claims were failure to protect, deprivation of right to access the courts, negligence, retaliation, assumpsit, and infliction of emotional distress.

[7]      Defendant Gumbarevic was not named in the caption of the Amended Complaint.  In the interest of justice and given the liberality afforded to pro se parties, the Court construed the Amended Complaint as asserting an access to courts claim against Defendant Gumbarevic.

The Corrections Defendants filed a partial motion to dismiss seeking to have Count III of the Amended Complaint, the "access to courts" claim, dismissed.  (ECF No. 15).  By Memorandum Opinion and Order filed on January 24, 2022, the Court granted the motion. (ECF Nos. 18 and 19).  Because of that ruling, only the Eighth Amendment failure to protect claim against Defendant Henderson (Claim I) and the First Amendment retaliation claim against Defendants Bennett and Day (Count II) remain. (ECF No. 18).  Discovery has now closed and the parties have each filed motions for summary judgment.

### III.  Standard of Review

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). "A fact is material if it 'affect[s] the outcome of the suit under the governing law'." *Bland v. City of Newark,* Nos.  17-2228, 17-2229, 900 F.3d 77, 83 (3d Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).   In deciding a motion for summary judgment, the Court's function is not to weigh the evidence, to determine the truth of the matter, or to evaluate credibility.  *See Montone v. City of Jersey City*,   709 F.3d 181 (3d Cir. 2013). Rather, "[i]n determining whether a genuine dispute of material fact exists, [the Court] view[s] the underlying facts and draw[s] all reasonable inferences in favor of the party opposing the motion."  *Bland*, 2018 WL 3863378, at *3 (citing *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 986 (3d Cir. 2014)).

Stringer is proceeding pro se and thus his filings are to be construed liberally.  If the Court can reasonably read the pleadings together with his summary judgment submissions to show an entitlement to relief, the Court should do so despite any failure to cite proper legal authority, confusion of legal theories, poor syntax, and sentence construction, or the litigant's

unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 414 F.2d 552, 555 (3d Cir. 1969) (although a filing prepared by a prisoner may be inartfully drawn, it should be read "with a measure of tolerance"). In examining the record, and in consideration of Stringer's status, the factual allegations set forth in his verified Amended Complaint will be considered as evidence to the extent that they are based on his personal knowledge. *Jackson v. Armel*, No. 17-1237, 2020 WL 2104748, at *5 (W.D. Pa. May 1, 2020) (citing *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit on summary judgment motion)). *See also Brooks v. Kyler*, 204 F.3d 102, 108 n. 7 (3d Cir. 2000) (noting that an affidavit is "about the best that can be expected from [a pro se prisoner] at the summary judgment phase of the proceedings").

Nonetheless, at the summary judgment stage of the proceedings, the Court need not credit bald assertions or legal conclusions unaccompanied by evidentiary support. *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). "[A] pro se plaintiff is not relieved of his obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (citation omitted).

These summary judgment rules do not apply any differently where there are cross-motions pending. *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008). As stated by the Court of Appeals for the Third Circuit, " '[c]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.' " *Id*. (quoting *Rains v. Cascade Indus., Inc.*, 402

F.2d 241, 245 (3d Cir. 1968)).  If review of cross-motions reveals no genuine issue of material fact, then judgment may be granted in favor of the party entitled to judgment in view of the law and undisputed facts.  *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

## IV.  Discussion

Stringer brings his claims against the Correction Defendants under 42 U.S.C. § 1983,[8] which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To prevail on a claim pursuant to 42 U.S.C. § 1983, a plaintiff must establish that a defendant, acting under color of state law, deprived the plaintiff of a right secured by the Constitution or laws of the United States.  *Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005); 42 U.S.C. § 1983.  "The first step in any such claim is to identify the specific constitutional right allegedly infringed."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  The Amended Complaint alleges a violation of the Eighth Amendment against C/O Henderson for failure to protect Stringer against harm, and a violation of the First Amendment against C/Os Bennett and Day for retaliating against Stringer for engaging in constitutionally protected conduct.  The Corrections Defendants do not dispute that at all times they were acting under color of state law. Thus, the Court's analysis focuses on whether the Corrections Defendants deprived Stringer of a

---

[8]     Title 42, United States Code, section 1983 "is not a source of substantive rights but a vehicle for vindicating rights conferred by the U.S. Constitution or by federal statute."  *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005) (citation omitted).

right secured by the Constitution or laws of the United States.   Stringer's claims will be addressed seriatim.

### A.      Eighth Amendment Failure to Protect Claim

The Eighth Amendment of the United States Constitution imposes a duty on prison officials to "take reasonable measures to guarantee the safety of inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984).  This includes the general duty to "protect prisoners from violence at the hands of other prisoners."  *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).

In the most general sense, for a prison official to be found to have violated the Eighth Amendment, three requirements must be met:   (1) the prisoner was incarcerated under conditions posing a substantial risk of serious harm; (2) the prison official was deliberately indifferent to that substantial risk; and (3) the prison official's deliberate indifference caused the prisoner harm.  *Shorter v. United States,* 12 F.4th 366, 374 (3d Cir. 2021); see also *Framer v. Brennan*, 511 U.S. 825, 832 (1994).

 As to the "substantial risk" inquiry, the single most important factor is that Stringer alleges he was labeled a "snitch/rat" by other prisoners based on C/O Henderson's comments made in front of other prisoners.  The Court of Appeals for the Third Circuit has acknowledged that labeling a prisoner as a "snitch" can create a substantial risk of serious harm.  See *Bistrain v. Levi*, 696 F.3d 352, 371 (3d Cir. 2012) (finding it was reasonable to infer that a prisoner rumored to be a snitch was at an increased risk of assault); *see also Brown v. Shrader*, No. 2:14-CV-1085, 2015 WL 5027510, at *4 (W.D. Pa. Aug. 25, 2015) ("If the Court accepts as true [the prisoner's] allegations that [a prison employee] labeled him a snitch, that the label was communicated to other inmates, and that he was aware of the obvious danger associated with a

reputation as a snitch, as a reasonable prison official in [the prison employee's] position would have known, then plaintiff has stated a claim of deliberate indifference."); *Williams v. Thomas*, 2013 WL 1795578, at *6 (W.D. Pa. Apr. 29, 2013) (collecting cases from district courts in the Third Circuit that have found that "the mere act of labeling a prisoner a snitch constitutes a substantial risk of harm.").

As to the "deliberate indifference" inquiry, the focus centers on what the defendant's mental attitude was, rather than what it should have been. *Farme*r, 511 U.S. at 841-42. "The prison official-defendant must actually have known or been aware of the excessive risk to inmate safety and disregarded that risk." *Shorter*, 12 F.4th at 375 (internal quotation marks and citations omitted). Further, whether a prison official "had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id*. (emphasis added) (internal quotation marks and citation omitted); *Farmer,* 511 U.S. at 842.

And as to the third component of the Eighth Amendment analysis, a prisoner, like Stringer who is subject to the PLRA, must prove physical injury in order to recover compensatory damages.  The Supreme Court, however, has recognized that "certain absolute constitutional rights may be vindicated by an award of nominal damages in the absence of showing of injury warranting compensable damages."  *Id*. at 250-51.  And punitive damages may likewise "be awarded based solely on a constitutional violation, provided the proper showing is made."  *Id*. at 251.

The parties have filed cross summary judgment motions on Stringer's failure to protect claim. Stringer contends he is entitled to summary judgment as no genuine issue of material fact

exists.  According to Stringer, C/O Henderson three times stated in front of other prisoners that Stringer was waiting to speak with someone in the Security Office and during the telephone call with the Security Office said, "Stringer is waiting to give you information."   Amended Complaint, at ¶ 5.  Stringer argues that C/O Henderson was deliberately indifferent to his safety by intentionally disclosing, in front of other prisoners, that Stringer wanted to provide information to the Security Office.   According to Stringer, based on C/O Henderson's comments, prisoners believed Stringer was a "snitch" or "rat" and began to threaten him. As a result, Stringer argues that the summary judgment record establishes that C/O Henderson's conduct constituted deliberate indifference to a serious risk of harm.

C/O Henderson argues that he is entitled to summary judgment because Stringer has failed to show that he was deliberately indifferent to a substantial risk of harm to Stringer or that Stringer suffered any actual harm, both of which are necessary elements of a failure to protect claim. Defs' Br. at 6 (ECF No. 44).  C/O Henderson does not deny that he stated in front of other prisoners that Stringer was waiting to speak with someone in the Security Office, but C/O Henderson claims that at no time did he call or refer to Stringer as a "snitch" or a "rat" in front of other inmates.  *See* Declaration of Bryan Henderson, at ¶ 9 (ECF No. 46-1 at p. 7).

As noted above, "[l]abeling an inmate a snitch may give rise to an Eighth Amendment violation if the prison official acted with deliberate indifference to a substantial risk of harm to the inmate." *Tabb v. Hannah*, No. 1:10-cv-1122, 2012 WL 3113856, at *6 (M.D. Pa. July 30, 2012) (citing *Benefield v. McDowall*, 241 F.3d 1267, 1270 (10th Cir. 2001).  Courts have found that when an inmate is labeled a snitch, it may endanger and pose a substantial risk to that inmate's safety.  *See, e.g.*, *Hamilton v. Leavy*, 117 F.3d 742, 747 (3d Cir. 1997) (finding that knowledge of an inmate's branding as a snitch posed an imminent threat).

C/O Henderson also argues he is entitled to summary judgment because Stringer has not alleged actual harm as the record does not establish that Stringer was "physically confronted or assaulted, or otherwise physically harmed as a result of" C/O Henderson's comments.   Defs' Br. at 6 (ECF No. 22).   C/O Henderson asserts that other prison officials took immediate and reasonable measures by moving Stringer to protective custody upon learning of the threats he was receiving.

Although Stringer was moved to protective custody, the undisputed summary judgment evidence of record shows that he continued to be threatened with physical harm as a result of being labeled a "snitch" by other prisoners and that he suffered mental and emotional distress as a result of these threats.   "An inmate need not wait until actual attack occurs to obtain relief." *Williams v. Thomas*, No. 12-01323, 2013 WL 1795578, * 5 (E.D. Pa. 2013) (citing *Benefield v. McDowall*, 241 F.3d 1267, 1270-71 (10th Cir. 2011) (rejecting the government's argument that a prisoner's claim was subject to dismissal in the absence of physical injury)).

The outcome of this claim turns on credibility, something that the Court cannot decide in reviewing a motion for summary judgment. *El v. Southeastern Pennsylvania Transp. Authority*, 479 F.3d 232, 237-38 (3d Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).   Whether C/O Henderson was deliberately indifferent to a substantial risk of harm to Stringer and whether that deliberate indifference caused harm to Stringer are triable issues of fact. Thus, the Court will deny the parties' cross motions with respect to the Eighth Amendment failure to protect claim against C/O Henderson.

### B.   First Amendment Retaliation Claim

It is well settled that retaliation for the exercise of a constitutionally protected activity is itself a violation of rights secured by the Constitution, which is actionable under section 1983.

*Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001). "Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right." *Rauser,* 241 F.3d at 333 (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (quoting *Thaddeau-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999) (en banc)).

However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a prisoner-plaintiff must make a three-part showing. First, as a threshold matter, the prisoner must "prove that the conduct which led to the alleged retaliation was constitutionally protected." *Rauser*, 241 F.3d at 333-34 (citations omitted). Next, the prisoner "must show that he suffered some 'adverse action' at the hands of the prison officials." *Id.* (citation omitted). The prisoner satisfies the adverse action requirement by "demonstrating that the action 'was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights'." *Id*. (quoting *Allah*, 229 F.3d at 225).

Finally, the prisoner must demonstrate "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Id*. A causal link is established when the "constitutionally protected conduct was a substantial or motivating factor in the decision" to take the alleged adverse action. *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002) (citing *Rauser*, 241 F.3d at 333); *Watson v. Rozum,* 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser,* 241 F.3d at 333-34)). The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005).

Once the prisoner has made this *prima facie* case, the burden shifts to the defendant prison officials to show they would have engaged in the same alleged adverse action absent the protected conduct. *Rauser*, 241 F.3d at 334. "At the summary judgment stage, the plaintiff need only meet his burden of producing evidence from which a reasonable jury could conclude that the adverse action was taken in retaliation for the exercise of his protected rights." *Booth v. King*, 346 F. Supp.2d 751, 762 (E.D. Pa. 2004). To withstand summary judgment and submit the question of causation to a factfinder, the plaintiff must "produce[] evidence from which a reasonable jury could conclude that the exercise of his right was a 'substantial and motivating factor' in defendants' actions . . . ." *Id*.

Using these precepts, the Court will analyze whether the summary judgment record includes evidence to support each element of a retaliation claim.

As to the first element, the undisputed summary judgment record reflects that Stringer filed Grievance 808825 against C/O Henderson. Without question, the filing of a grievance is constitutionally protected activity. *Fantone v. Latini*, 780 F.3d 184, 192 n.8 (3d Cir. 2015) ("The filing of a prison grievance is an activity protected by the First Amendment."). Thus, the Court finds that Stringer has satisfied the first element of a retaliation claim.

The Corrections Defendants have filed a brief, a statement of material facts ("SMF"), and supporting documents in support of their motion for summary judgment. Stringer was directed to file a response by August 11, 2023. (ECF No. 48). To date, Springer has not filed a brief or other documents in opposition to the pending motion for summary judgment nor has he requested an extension of time to do so. Moreover, Springer has not offered any explanation for his failure to respond to the motion for summary judgment.

Local Rule 56(E) imposes an affirmative duty on a litigant to respond to the moving party's Concise Statement of Material Facts and provides that "[a]lleged material facts set forth in the moving party's Concise Statement of Material Facts . . . will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." *See also* Fed.R.Civ.P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c) . . . consider the fact undisputed for purposes of the motion[.]").

Here, because Springer has not denied or otherwise contradicted the facts set forth in the Corrections Defendants' SMF, the facts set forth in the Corrections Defendants' SMF are deemed admitted. (ECF No. 51). Relying on these facts, the following is undisputed:

Springer was moved to Cell I-B2019 on Administrative Custody on June 14, 2019. (SMF, ¶ 10). I-Block is part of the Restricted Housing Unit ("RHU") at SCI-Greene. (*Id*. at ¶ 9). Corrections Defendants Bennett and Day were assigned to I-Block in June and July of 2019 and worked the 1400 – 2200 shift. (*Id*. at ¶¶ 11 – 12). Stringer submitted Inmate Grievance 808825 dated June 25, 2019, while he was in the RHU. (*Id*. at ¶ 20). The grievance asserted that while Stringer was waiting to speak to Security, C/O Henderson on three occasions, in front of other prisoners, announced that Stringer was there to provide information to Security. (*Id*. at ¶ 21).

In support of their motion for summary judgment, the Corrections Defendants have submitted the Declarations of C/O Jeremy Bennett, C/O Jeffrey Day, former Grievance Coordinator at SCI-Greene Tracy Shawley, and C/O Frank Trout, which are summarized as follows:

C/O Bennett knew C/O Henderson but did not work any assignments with him; he was not aware of any inmate grievances filed against C/O Henderson in June of 2019 and typically would not be made aware of the filing of grievances against other corrections staff; he did not have the authority to deny a legal exchange to an inmate if the appropriate paperwork had been submitted; he did not tell Stringer at anytime that since he filed a grievance on C/O Henderson, C/O Bennett would prevent or impede his access to his legal property; and he had no knowledge of Stringer's legal cases and deadlines. Declaration of Jeremy Bennett (ECF No. 52-1 at pp. 8-9).

C/O Jeffrey Day was aware of C/O Henderson, but never had any common work assignments with him; in the Summer of 2019, he was not aware of any inmate grievances filed against C/O Henderson; it would be unusual for him to be made away of any grievances against other corrections staff;  he did not have the authority to deny a legal exchange to an inmate if appropriate paperwork had been submitted; he did not tell Stringer on June 27, 2019, or any time afterward that since he filed a grievance on C/O Henderson, C/O Day would make sure Stringer did not receive his legal paperwork; and he had no knowledge of Stringer's legal cases and deadlines at any time.  C/O Day also states that Stringer had full access to his property when it was inventoried on June 20, 2019; that legal exchanges were permitted every 30 days; that if he was the assigned property officer and the proper information was presented, then he would assist the inmate in making a legal exchange. Declaration of Jeffrey Day (ECF No. 52-1 at pp. 11 – 12).

Tracey Shawley is currently the Unit Manager at SCI-Greene.  In June and July of 2019, she was the Superintendent's Assistant at SCI-Greene and in that position served as the Grievance Coordinator at SCI-Greene.   According to Ms. Shawley, inmate grievances are

retrieved from a lock box in each RHU block;  either Ms. Shawley or someone from her office would typically collect the grievances in the morning and the grievances would be processed that day; Grievance 808825 filed by Stringer was assigned to Lieutenant Frank Trout as the Grievance Officer responsible for providing the Initial Review Response; as a matter of practice and procedure, information concerning the subject matter of an inmate grievance is only shared with Ms. Shawley's staff and the assigned grievance officer; and corrections staff did not have the ability to access information concerning the subjects of inmate grievances.  Declaration of Tracey Shawley (ECF No. 52-1 at pp. 14 – 15).

Lieutenant Frank Trout was assigned to respond to Grievance 808825 filed by Stringer; during the course of his investigation, he did not divulge the substance of the grievance, nor did he identify C/O Henderson as the subject of the grievance, to anyone not involved in the investigation; and he specifically did not inform C/O Bennett or C/O Day of Stringer's grievance against C/O Henderson.  Declaration of Frank Trout (ECF No. 52-1 at pp. 17-18).

The verified Amended Complaint contradicts some of the statements made by C/O Bennett and C/O Day in their Declarations.  For example, according to the verified Amended Complaint, C/O Day told Stringer on June 27, 2019, that "since he filed a grievance on Defendant Henderson he would make sure he got nothing." Amended Complaint, Stmt of Facts, at ¶ 28. Stringer avers that on numerous occasions he requested that both C/O Bennett and C/O Day talk to Unit Manager Gumborevic because he was approved to get his legal work.  And on a number of occasions, "both Defendants Bennett and Day told Plaintiff that since he filed a grievance on Defendant Henderson they [were] not giving him his legal work and laughed."  *Id*. at ¶ 37.

The Court finds this controverted evidence creates a disputed issue of material fact as to whether Defendants Bennett and Day knew of the grievance filed against Henderson and acted on that information.   Examining the record in the light most favorable to Stringer, the nonmoving party, the Court finds that such action satisfies the "adverse action" requirement of *Rauser* as it would be "'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights'." *Rauser*, 241 F.3d at 333 (quoting *Allah*, 229 F.3d at 225). Thus, the Court finds that Stringer has satisfied the second element of a retaliation claim.

Having met the adverse action requirement, Stringer must also provide evidence of a causal connection between the exercise of his constitutional rights and the Correction Defendants' adverse action to withstand summary judgment.   "[T]he plaintiff need only meet his burden of producing evidence from which a reasonable jury could conclude that the adverse action was taken in retaliation for the exercise of his protected rights."  *Booth*, 346 F.Supp.2d at 762.   In *Rauser,* the Court of Appeals for the Third Circuit held that "suggestive temporal proximity" is relevant to causation in a retaliation case.  *Rauser*, 241 F.3d at 334 (citing *Farrell v. Planters Lifesavers Co*., 206 F.3d 271, 280 (3d Cir. 2000)).

The summary judgment evidence of record reflects that Stringer filed his Grievance against C/O Henderson on June 25, 2019.   According to the verified Amended Complaint, on June 27, 2019, only two days after the Grievance was filed, C/O Day told Stringer he would not get his legal material because he had filed a Grievance against C/O Henderson.  The Court finds that Stringer has provided evidence of a causal connection between the exercise of his constitutional rights and the Correction Defendants' alleged adverse action from which a reasonable jury could conclude that the exercise of his right was a 'substantial and motivating

factor' in defendants' actions . . . ." *Booth*, 346 F.Supp.2d at 762.  Thus, the Court finds that Stringer has met the third element of a retaliation claim.

While the Court acknowledges that the act of denying the legal exchange in and of itself does not rise to the level of a constitutional violation,[9] the law in this Circuit is that "government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right." *Rauser,* 241 F.3d at 333. For all these reasons, the Court will deny the Corrections Defendants' motion with respect to the First Amendment retaliation claim against Defendants Bennett and Day.

### C.   Damages

The Corrections Defendants final argument is that, even if Stringer has established a constitutional violation, he is unable to recover compensatory damages because he has failed to establish that he suffered a physical injury. The Court agrees with this argument.  The law is clear that absent an allegation of physical injury, a prisoner subject to the PLRA cannot obtain compensatory damages.  *See Allah v. Al-Haffeez*, 226 F.3d 247, 251 (3d Cir. 2000) (concluding that mental and emotional distress cannot support a claim for compensatory damages).

Title 42, United States Code, § 1997e(e), provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a showing of physical injury."  But Section 1997e(e) <u>only</u> applies to claims for compensatory damages.  *Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003).  It does not bar claims for nominal damages, punitive damages, or prospective equitable relief, such as injunctive or declaratory relief.  *Id*. at 533-34.  *See Doe v.*

---

[9]      In fact, the Court previously dismissed Stringer's access to courts claim finding that the allegations in the Amended Complaint were insufficient to state an access to court claim.  *See* Memorandum Opinion, 1/24/2022. (ECF No. 18).

*Delie,* 257 F.3d 309, 314 n. 3 (3d Cir. 2001) ("However, § 1997e(e) does not bar claims seeking nominal damages to vindicate constitutional rights, nor claims seeking punitive damages"); *Allah v. Al-Hafeez*, 226 F.3d 247, 251-52 (3d Cir. 2000) (holding that § 1997e(e) does not bar nominal and punitive damages for violations of constitutional rights even in the absence of physical injury).

Thus, to the extent that Stringer seeks compensatory damages without having any physical injury, such a claim for compensatory damages is precluded.  42 U.S.C. § 1997e(e). And while Stringer does not explicitly seek nominal damages, he need not plead that he is seeking nominal damages.  *See Mitchell v. Horn*, 318 F.3d at 533 n.8.  Stringer does explicitly seek punitive damages.  Therefore, it is for the jury to determine whether Stringer is entitled to nominal and punitive damages.

## V.  Conclusion

For all these reasons, Plaintiff's motion for partial summary judgment will be denied. The Corrections Defendants' motion for summary judgment will be granted in part and denied in part.  The motion will be granted <u>only</u> to the extent that Stringer's claim for compensatory damages is precluded by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e).  In all other respects, the motion will be denied.

An appropriate Order follows.

Dated:  December 14, 2023

BY THE COURT:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc:    ROBERT STRINGER
       GJ-1592
       SCI SOMERSET
       1590 Walters Mill Road
       Somerset, PA 15510-0001
       (via U.S. First Class Mail)

       Scott A. Bradley
       Office of the Attorney General
       (via ECF electronic notification)